Cantrell may proceed. Thank you your honor and may it please the court. The Arkansas Department of Correction provides inmates with a variety of nutritious meal plans. This case is about the ADC's declining to subsidize an inmate's religious observance by declining to serve him with a special religious food item at its own expense. And I'll make three points. First, the grievance process was available to inmate Muhammad and it had to be exhausted as a matter of law. Second, there is no substantial burden. And third, the ADC must further its compelling interest in cost-efficient food service in a way that remains neutral among religions. So first, the court should not even reach the merits of this case because the grievance process was available to Muhammad and it had to be exhausted as a matter of law. Muhammad has argued that his request under the religious diet policy to the chaplain was sufficient all by itself to exhaust his administrative remedies. But this claim ignores the law which requires exhaustion of all available remedies. It ignores the undisputed trial testimony as well as Muhammad's own practice of raising religious dietary issues through the grievance process. So first, under the Supreme Court's Ross v. Blake opinion, an inmate must, quote, err on the side of exhaustion, unquote, when there is some question about an administrative process. Now here there was nothing at all unclear about the ADC's exhaustion requirements, but even if there had been as a matter of law, Muhammad still had to use the grievance process when his request under the religious diet policy was denied. How would you respond to the argument that it was a dead end given that he had already been denied his request under AD 13? Yes, Your Honor. 1318. Yes, Your Honor. Mr. Muhammad has argued that the grievance policy was a dead end and therefore he was excused from exhausting the grievance process. But that argument is directly at odds with the Supreme Court's holding in Booth v. Turner. And I would point the court to footnote 6 of Booth where the Supreme Court specifically holds that an inmate must exhaust irrespective of the administrative avenues. The plaintiff in Booth had made the claim that he was excused from exhausting because he wanted relief in the form of monetary damages. And there was no way that the prison was going to give him monetary damages unless he filed a lawsuit. But the court ruled that he still had to exhaust administrative remedies before filing suit even though his requested relief was not obtainable through the grievance process. Mr. Muhammad's with the Supreme Court's Ross v. Blake opinion. Ross relies on Booth. But and Ross holds that an inmate does not have to exhaust when officers are unable or consistently unwilling to provide any relief to aggrieved inmates. And that's just not the case here. There's also a case law, is there not, that if the institution understands what the complaint is, even if it isn't very informal, even if it isn't artfully drafted, that they at least know what the complaint is and can address it. Then, then you've exhausted. Was the complaint as before said they actually addressed by the institution? Your honor, Mr. Muhammad filed some grievances. In none of those grievances did he ever articulate the claim that he made after filing his lawsuit and at trial, which was that a vegetarian halal diet would not suffice. That is not presented in any grievance. What was it addressed though? Did they understand that that was what he was really complaining about and said, we're only going to give you a vegetarian diet? I mean, regardless of whether he used the words, did they understand what he was complaining about? No, your honor, the ADC did not ever understand that to be Muhammad's claim. Mr. Muhammad claimed that he was constantly being served pork, which was incorrect. He claimed that that Jewish inmates were being treated differently. He alleged cross-contamination, but he never claimed, he never made the claim that a and the, you can see in the ADC's responses to Mr. Muhammad that they did not understand him to be making that claim either. What about the, um, the claim or the complaint that he submitted to the chaplain? Did that cover the, the meat claim? Uh, your honor, Mr. Muhammad, uh, there are three responses from the chaplain in the record, um, that to Mr. Muhammad. And, uh, those were made under the religious diet policy. Um, but was the, what was the, what was his complaint or claim or grievance to the chaplain? Yes, your honor. The, uh, the letters or the requests from Mr. Muhammad are not in the record. Uh, but it does appear that at one point, uh, Mr. Muhammad, um, did seek, uh, he did make a request for a vegetarian meal that allowed him to eat fish products. Uh, and the response was that from the chaplain that the chaplain is not authorized to provide this kind of, of a diet. Uh, now at that point that there's, there's plentiful evidence in a record that at that point, Mr. Muhammad needed to go to the grievance process. He needed to file a grievance. He needed to exhaust that grievance in order to exhaust. Well, but the, um, submitting grievances to the chaplain that was part of, that was one recognized option of the grievance process, wasn't it? No, your honor. It was not. This was, there was testimony that there was a, there was a category of grievances that the chaplain was authorized to, to handle. Uh, that's, that's not correct, your honor. Um, but the reason your honor is asking the question is there were, were, uh, two policies that are relevant here. One was the religious diet policy under which the chaplain was authorized to provide certain accommodations. Uh, if an inmate wished to, for an inmate was not authorized to provide under that religious diet policy, then the evidence below was that he needed to file a grievance. Uh, the chaplain is not with authority to make decisions with respect to, uh, grievances. And that would have had to have that his request would have had to have gone through the ordinary grievance process. So the council, what were the administrative remedies that were still available to him through the grievance process? Uh, yes, your honor. Uh, Mr. Muhammad would have needed to articulate his claim, uh, that a vegetarian halal diet is, uh, not sufficient. Uh, he would have had to have gone through the steps of an informal grievance, um, a formal grievance, and then file an appeal, uh, to the deputy director. Um, and if, had he done all those things, uh, then Mr. Muhammad would have adequately exhausted the grievance process. Uh, but he did not. And so, um, uh, Mr. Muhammad never raised the claim that, uh, again, that he raised post trial or excuse me, post filing his lawsuit, uh, for the first time, which was that a vegetarian halal diet was not sufficient. Is there any argument about futility that you did? I mean, we're, we're at, we're at this stage of the proceedings and the department has indicated it's not going to comply with this request. Is there a futility argument here? Uh, I don't think so, your honor, because under Booth, um, under the Supreme court's Booth, um, precedent, so long as there is the possibility of, of some relief through the administrative agency, through the grievance process, uh, the inmate would have had to exhaust. Now had Mr. Muhammad adequately, uh, conveyed, uh, his, the need that he now claims that he has, uh, to the ADC, it's entirely possible that the ADC could have, uh, made some sort of an accommodation, whether or not that would have satisfied Mr. Muhammad. Uh, it's impossible to say. Um, but, uh, the ADC, uh, could have, for example, provided him with any fish that the prison kitchen happened to have on hand that day. If he needed a fish portion, uh, could have ensured that nothing prevented him from purchasing halal meat from the commissary. If there were any, uh, any regulations or rules in place, uh, preventing that. Uh, but, uh, but again, Mr. Muhammad did not, did not adequately inform the ADC, uh, of his claim. So, uh, we can't, uh, all of that is hypothetical, uh, at this point. Um, I will say the ADC has, um, the ADC does seek to accommodate inmates, uh, whenever possible, whenever it's fair to the inmate population, when, uh, it's consistent with the, uh, security and uh, again, whenever it can remain neutral, uh, among religions. And so I think, uh, looking at the substantial burden, I think three cases, um, are most relevant here. Um, first is Supreme Court's Cutter v. Wilkinson opinion, uh, and then this court's opinions in Patel and Pratt. Uh, and then if I have time, I'd also like to address, uh, Jones v. Carter, which is a recent seventh circuit. Let me jump right in there in light of Hobby Lobby and Holt. Do you think the substantial burden framework in Patel is still valid? I do your honor. And, um, the Jones v. Carter case is, is relevant here. This is the seventh circuit case that, uh, my friend, Mr. Askew, uh, submitted to the court, um, via 28J letter and we filed a response. Uh, that case seemed to read, uh, Hobby Lobby and Holt in a very expansive way. Uh, and in fact, when you, when you look at the opinion, uh, closely, you can see that, uh, it did not say in, um, in Holt and Hobby Lobby. So, so in brief in Holt, uh, the inmate was faced with, uh, severe disciplinary, uh, punishment. Uh, the, the phrase was serious disciplinary action. That was a penalty if he exercised his, uh, his, uh, his religious belief by growing a beard. In Hobby Lobby, there was a penalty, a substantial penalty, as the court put it, an in, uh, in Jones, uh, uh, the seventh circuit said, talking about the Supreme Court said, the court did not indicate that pressures of that severity represented the floor for finding a substantial burden. Uh, so Jones based its reading of Holt and Hobby Lobby on what the Supreme Court did not say. There is nothing in Holt or Hobby Lobby that should undermine this court's previous, uh, rulings in Pratt and Patel on the substantial burden analysis. Well, which is a greater burden, uh, a direct penalty to a large company like Hobby Lobby, uh, or forcing an inmate with $10 in their account to purchase meat five times a week? Well, with, with respect, Your Honor, that's, that is not the case here. Mr. Muhammad had access to, um, a large number of funds. Uh, he is, as the inmates say, prison rich. And so, um, he was on the other end of the spectrum from an indigent inmate. Um, now as far as the burden in Hobby Lobby, it's hard to, to tell because the court did not provide us with, um, with that, uh, detailed financial analysis, but, but I will say that Mr. Muhammad is not, uh, substantial given his, uh, substantial access to funds, his deposits. He has $6,400 worth of deposits. He spent $2,400 in the commissary, $1,000 on electronics. He had plenty of money, uh, to, to spend on Halal meat had he wished to spend it. And I'll reserve the balance of my time if there's no questions. Very well. Mr. Askew. Thank you, Your Honor. May it please the court. I'm Jess Askew here on behalf of Mr. Muhammad. Two things before I jump into what I think, um, is most on the court's mind. Uh, listening to ADC's argument and reading the briefs, one forgets that the burden to prove the affirmative defense of exhaustion is on ADC, not on the prison inmate, uh, Mr. Muhammad. And when there is a failure to come forward with evidence at trial, including the correspondence to the chaplain where Mr. Muhammad testified, he requested meat. When there's a failure to come forward with evidence at trial, the party with the burden of proof loses, which is what Judge Baker properly found here on the administrative exhaustion. That's just one of the many problems that ADC has with the exhaustion argument. Now, I want to get directly into this substantial burden issue because I've been thinking about that a lot, uh, Judge Grotz and, uh, Jones versus Carter is very similar to this case. Even the Illinois, uh, prison system evolution of kosher meals prepackaged with meat going to non-meat kosher, uh, diet is exactly parallel to what we have in this case. And, uh, the inmate there, just as my client did said, halal diet for me means halal meat with my diet. And after a trial, uh, the inmate won. It's very similar to this case. And the substantial burden analysis there does call into question the Patel standard. There's no question about it. And I think that it's the issue there is what is the religious exercise and is there a wealth component to the religious exercise? In other words, if we have someone who is rich and my client is not, I'll address that also. But if we have, um, Bernie Madoff before he has to give his money back in the And he can buy as much, um, canned tuna as he can eat from the commissary. Uh, is his religious exercise still substantially burdened? And I think it's important that Patel talked about that in that, in that sense, but Holt did not, uh, uh, Burwell did not. Now Burwell talked about a substantial penalty. That's the government coercion side of the equation. In other words, what is the government doing to compel or coerce someone to act in a way that violates sincerely held religious beliefs? Uh, Holt is the same thing. If you grow a beard, you violate our policy. We punish you. That's the government coercion side of the equation. What Jones versus Carter raises and what Holt, uh, raises is, is there a wealth index for the exercise of religious liberty under our LUPA? And I think under, uh, the first amendment. And I don't think there is. Jones versus Carter very clearly says the Supreme court did not say there was. And, um, so I think, uh, that's where we're headed now. I don't know where that ends up, um, in terms of adjudicating cases, uh, this case should be affirmed based on the facts that we have that I'll get into. But in terms of whether there is an all encompassing standard that can be written at this point in the development of the law on what is a substantial burden under our LUPA as it is evolving. Uh, I don't think we have that. And I think Jones very, uh, importantly raises that question. Um, I think the Musazadeh case also from the fifth circuit in 2012 raises the question, now that was a summary judgment case, not a case after trial, the way we have here as for whether Mr., uh, yes. Just to go back to your, the grievance, the exhaustion issue for a second, it arguably address this issue was the one where he talked about the, um, kosher diet and the common meal and the other three were more dealing with pork and pork contamination, is that right? That's not correct. Okay. Uh, there were four grievances. Number one was salami and bologna contained pork. That's the pork. And that one was grievant. That one was, uh, exhausted according to the findings of the court. We have numbers two and three, which say I want a halal diet and halal diet requires meat prepared according to my religion. They were not exhausted according to the, uh, trial court's findings of fact. Number four was, I have discovered the love and fegans cases, uh, Jewish inmates got kosher meals. I want the same accommodation. Now those are the grievances. The state pretends that there's a divide, uh, between the grievance process and the AD 1383 religious diet, uh, request process. And there's not a divide. And on those three requests to the chaplain, my client said, I want meat. And the chaplain wrote back saying vegetarian, no meat in all caps, or you may not have fish with your vegetarian meal. Uh, and of course, So does your, uh, exhaustion argument dependent upon us finding that they are one process rather than two? No, that's what the state's process, that's what the state's argument is. The exhaustion of remedies is a convenience for the state. It's up to the state to decide whether to have one. And if so, what, what it's parameters. Yeah. I didn't ask that. What I meant was, do we have to, does your argument depend upon us finding that, uh, a complaint under the religious, uh, meal, uh, rule, uh, is part of the, uh, grievance process? No, it is part of the exhaustion of administrative remedies under PLRA, which may be what the court's point is. The, the law requires exhaustion of available remedies. The law does not require exhaustion of grievances, which is the way the state wants to play it. When the state set up 1383 and said, if you have a religious dietary accommodation request, you go ask the chaplain, no appeals, no six day deadlines, no, um, statements. None of those rules are around that. That's an administrative remedy that counts under PLRA. But if he's, if he's denied under 1383, why can't he then file a grievance under 1216? The question is whether he's required to. And the state's 1216 grievance policy does not say that he is. Uh, the district court made specific findings of fact on that. And they are absolutely true. 1383 is written. It's in the record. It does not specify an appeal. It does not specify a grievance on top of the religious dietary request. And the function of administrative remedies is to let the prison system know, Hey, I've got this request. Can you help me before I go to court? And the prison system here had every opportunity to respond. It had every opportunity to know what the request was, and it just didn't do what it should have done. Uh, which is look at the issue and had this aha moment that we had at when the director of the department of corrections was on the witness stand under oath and she said, Oh, if he just wants fish, that's not a problem. Not a problem. Of course, the state doesn't like that when I keep throwing that fact up. Uh, but the district court made a specific notation of that at addendum 17 footnote five. Not a problem. It, is there any evidence in the record as to whether the request to the chaplain or, or does he, if he denies it, does he forward, does he tell somebody he denied it, other than the prisoner, or does he make some inquiry as to whether this accommodation can be, can be met? The, um, policy as written really doesn't get into that. And I would suggest that the policy is probably written as a defensive measure. You know, we've got this safety valve over here and you can go wander off into that neighborhood if you want. Uh, you're not going to get anywhere. It does not require that the chaplain go up to the, up the line that you would, the way you would with Sarbanes-Oxley reporting or something like that. Uh, it does not require that the food service get involved. In fact, we have testimony from Ms. Skillen, uh, who testified in the Kelvin, uh, Love case 19 years ago, and also testified in this case that she doesn't get involved in these 1383 requests. Uh, but I can't help the way the department chooses to craft its administrative remedies. And it crafted an avenue here that leads straight to the chaplain. The department did not prove the totality of the correspondence between my client and the chaplain. We have in the record, vegetarian means no meat, no fish. And, uh, based on that, the trial judge properly found that the district, or that the ADC did not carry its burden to prove exhaustion. And, you know, there's no attack on that as clearly erroneous. Instead, the argument is a legal question that we've got a bucket called grievance, and that's the only thing that we have to consider under PLRA. The problem is PLRA says administrative remedy in 1383 on its face and as my client had, and it postdates 1216, uh, 13 indicates it's a 2013, uh, remedy and 12 indicates a 2012 grievance process, as I understand it. Counsel, the lawsuit started, as I understand it, with, with the available to him, um, meals that, uh, were halal meals or compliant meals. Correct? Correct. And then, um, and in response to that, there was evidence that there are several different dietary plans that are offered by the prison that appeared to be compliant, like vegetarian plans, et cetera. And then, as I understand it, this, the, the allegation of the specific requirement of, of the meat, uh, halal meat came up during the summary judgment process, right? That's correct. Before I was appointed, when my client was still pro se, he managed to say, wait a second, I want meat, halal means meat now, and the district judge permitted that we went to trial and at trial, we are now in the phase of proof and the ADC had every opportunity to prove its case that that claim was not exhausted. And the district court heard all of the evidence presented and ruled against the, the ADC. And there's no claim that there was a clearly erroneous fact finding. And so there was no issue about the claim being brought, being raised too late in the, in the proceeding? And when we, no. And when we go, I think all sins are, are purged on summary judgment when you get to trial. You know, then if you have a summary judgment issue, you need to raise it as a 50A motion at trial. There was a 50A motion. That motion was substantial burden. And that's the one that runs headlong into Jones versus Carter. There was no motion on administrative exhaustion, but of course there could not be because that's the state's burden. And, um, the 50A motion goes to the, the inmates proof. My client had to prove sincere belief and substantial burden. What was the, what was the proof about the commissary, um, usage by Mr. Muhammad? Thank you. Um, because my client is not prison rich. The ADC came with evidence of his bank account at trial, $10 and $0.54 as the court found, $0.53 away from what the department considers to be indigency. If indigency enters into the question of substantial burden, that's what the facts are, and that's the way the court decided the case, I'm not sure that indigency does enter into substantial burden, but in the past, yes, he had received $6,000 in the 11 years that he had been incarcerated. And, uh, he had spent a lot of that money on batteries, you know, for his Walkman, uh, or whatever device people have these days, um, a lot of money on ramen noodles, which were said to be kosher and halal on the commissary list. And then at trial, the state shows up and says, oh, that's not even, um, halal. Well, my client thought that that it was. And then he also bought, uh, goods that clearly he admitted were not halal. Uh, like Little Debbie's, it's the Little Debbie case, uh, that he bought for barter within the prison system. Not permitted, goes on all the time. The district court made findings about that. The state tried to play that as lack of sincerity. This guy goes out and buys Little Debbie's, therefore he cannot be religiously sincere in his halal diet with meat. Uh, that that's a credibility issue. The state was heard fully and the district court made a finding of fact against the state. Unless there are any other questions, I will see my remaining four seconds. Thank you. Thank you. Uh, one other point, I'm sorry. Uh, the first words out of the ADC's mouth were, uh, you can't make us spend money, uh, for religious exercise. And our lupa says to the contrary in 2000 CC3C. All right. Right. Mr. Cantrell, you have one minute and three seconds. Thank you, your honor. Uh, I will, uh, just say that trial counsel did raise, uh, the issue at Mr. Mohamed not, uh, raising his, the claim that he developed after filing the lawsuit, um, it, that was discussed at trial, I believe that was explicitly in the, um, at the very beginning of the trial, um, perhaps in his opening statement. Um, as to correspondence with the chaplain, uh, not being in the record, that's, that's beside the point as far as the legal issue of exhaustion is concerned, correspondence with the chaplain has nothing to do with the process, uh, under the, the grievance policy, uh, which, uh, actually does state no less than three times the grievance policy states no less than three times inmates must fully exhaust the grievance procedure prior to filing a lawsuit, uh, exhaustion is required prior to filing a lawsuit under the prison litigation reform act. This is at, uh, appendix 882, 383, um, and 896. And anyway, it's, it's stated repeatedly. I'll see that I'm out of time. Uh, if there are no further questions, uh, we ask that, uh, the court reverse and remand for entry of judgment in the appellant's favor. Thank you. All right. Thank you. Counsel. Case is submitted. You may stand aside.